**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Kevin W. Fraley, | : | Case No. 1:09CV1527 |
| Plaintiff, | : | |
| vs. | : | **MAGISTRATE'S REPORT & RECOMMENDATION** |
| Commissioner of Social Security Administration, | : | |
| Defendant. | : | |

Plaintiff seeks judicial review of a final decision of the Commissioner denying his application for Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U. S. C. § §§ 1381, *et seq*. and 405(g).  Pending are briefs on the merits filed by both parties and the Reply filed by Plaintiff (Docket Nos. 14, 17 & 18).  For the foregoing reasons, the Magistrate recommends that the Court affirm the decision of the Commissioner, dismiss the complaint and terminate the referral.

## I.  PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on December 22, 2005, alleging disability since December 4, 2003 (Tr. 54-58).  His application was denied initially and upon reconsideration (Tr. 41-43, 45-47).  Administrative Law Judge (ALJ) Stephen Hanekamp conducted a hearing at which Plaintiff, represented by counsel, and Vocational Expert (VE) Kevin Yi appeared and testified (Tr. 235).  The ALJ issued an

unfavorable decision on December 30, 2008 (Tr. 11-23).  On May 13, 2009, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner (Tr. 3-5).  Plaintiff filed a timely request for judicial review.

## II.  FACTUAL BACKGROUND

Plaintiff completed the eighth grade (Tr. 239).  He did not have a driver's license and he had resided with his mother all of his life (Tr. 240-241).  Plaintiff had been employed as stock personnel at a grocery store; however Plaintiff became frustrated and confused about his work schedule and showed up for work on the wrong days.  Consequently, Plaintiff was fired (Tr. 242).  Plaintiff had also worked for the Board of Education as a janitor during a work study program (Tr. 243).

Plaintiff rarely left the house, had few friends and rarely saw his only sibling (Tr. 243, 246).  Plaintiff did see his girlfriend of three years daily.  She was 20 years of age and was employed as a babysitter.  When together, the couple played video games and watched television (Tr. 244).

During the day, Plaintiff watched television and completed the "housework."  Plaintiff did assist his mother with cleaning and preparing the meals.  Plaintiff spent most of his day  "just relaxing"  His mother did the laundry and she cared for Plaintiff's pets (Tr. 245).

In 2003, Plaintiff was "jumped by a group of people and almost drowned."  Plaintiff described this as a traumatic year (Tr. 248).  Plaintiff was prescribed medication to treat anxiety (Tr. 246).  The effect of the medication was that on some days, he had extremely high energy; however, on about three days weekly, all he wanted to do was lay around (Tr. 247).  Plaintiff opined that he was disabled as he was unstable on his medication (Tr. 248).

Upon review of Plaintiff's employment record, the VE opined that Plaintiff had no past relevant work (as defined under the Act) (Tr. 251).  A younger individual with an eighth grade education and no

medically determinable impairments that would limit his physical ability to do basic work related activities, could perform work as a laundry clerk, warehouse worker or landscape laborer.  Nationwide, there are approximately 300,000 laundry clerk jobs.  In the State of Ohio, there are approximately 12,000 laundry clerk jobs.  With respect to the warehouse worker positions, there are two million jobs nationwide and 88,000 jobs in the State of Ohio.  The landscape laborer jobs total 1.2 million nationwide and 42,000 jobs in the State of Ohio (Tr. 253).

In response to cross-examination by Plaintiff's counsel, the VE opined that a person with the same educational background or work experience as Plaintiff with a limited ability to remember short, simple instructions would not be able to perform the work of laundry clerk, warehouse worker or landscape laborer on a competitive, full time employment basis (Tr. 254)

### III.  MEDICAL EVIDENCE

Starting with the class of 2001, all students had to pass writing, reading, mathematics, citizenship and science sections of the Ninth Grade Proficiency Test in order to receive a diploma.  Plaintiff did not attempt to "pass" any of the sections (Tr. 109).

In October 2004, Plaintiff presented to the hospital for treatment of pneumonia and asthma exacerbation.  On October 26, 2004, Dr. David Wendt conducted the follow-up care, prescribing medications designed to treat  respiratory ailments (Tr. 229).

From December 27, 2005 through June 22, 2006, Plaintiff treated with Ellen Boehron, a licensed social worker.  Ellen Boehron opined that Plaintiff might be prevented from working because he was easily confused and he forgot easily (Tr. 192).

Dr. Josephine Sabharwal commenced treating Plaintiff on January 12, 2006, at the Far West Center, a community mental health treatment facility.  Dr. Sabharwal diagnosed Plaintiff with an anxiety

disorder, asthma, and moderate symptoms or moderate difficulty in social, occupational or school functioning (Tr. 202).  Dr. Sabharwal followed a plan of intervention including monitoring Plaintiff's medication and adjusting it according to his mood, temperament and circumstances (Tr. 194-208).

The psychiatric review conducted by Melanie Bergsten on June 9, 2006, showed that Plaintiff had an anxiety disorder that does not meet the criteria for any other specific disorder (Tr. 214).  The degree of limitations in his restriction of activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace was mild.  Plaintiff had no episodes of decompensation (Tr. 219).

On November 27, 2006, the Employment Alliance staff conducted an evaluation to assess whether Plaintiff could receive services (Tr. 154).  Upon completion of the orientation, a goal of obtaining part-time employment by applying for two jobs each week and meeting twice monthly with an Alliance employment specialist to assess his progress was set (Tr. 155).

On December 15, 2006, Plaintiff tested well below average on the Kaufman Brief Intelligence Test which measures verbal and nonverbal intelligence.  Plaintiff scored below average on the Wonderlic Personnel Tests, a test that measures the aptitude of a perspective employee for learning and problem-solving (Tr. 163).

In January 2008, Dr. Richard A. Mason diagnosed Plaintiff with a mood disorder, alcohol abuse, good social support, chronic mental illness and moderate symptoms or moderate difficulty in social, occupational, or school functioning.  Plaintiff was prescribed a mood stabilizer (Tr. 180).  The initial dosage of the antidepressant was increased on March 28, 2008 (Tr. 173).

Dr. Mason conducted an assessment of Plaintiff's ability to do work-related activities on April 25, 2008.  He opined that Plaintiff had a marked ability to maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity

4

to others, complete a normal workday and workweek and get along with coworkers and peers (Tr. 182-183).  It was his opinion that production demand or quotas or the need to make quick and accurate, independent decisions were stressors that would increase the level of impairment beyond the marked level of impairment (Tr. 183-A).

Dr. Mason linked the increased dosages of medication with Plaintiff's gastrointestinal symptoms; however, in early May 2008, the symptoms were resolved (Tr. 171, 172).  During his appointment in late May 2008, Plaintiff was instructed that he needed to obtain laboratory work to assess the side effects of his medication (Tr. 170).  In June 2008, the dosages of his medication were reduced to target changes in sleep and irritability (Tr. 168).  On July 18, 2008, Dr. James T. Bukuts prescribed a sleep aid (Tr. 165).

On April 25, 2008, Licensed Social Worker John Burdick opined that Plaintiff had extreme limitations in his ability to remember locations and work-like procedures, carry out short and simple instructions, maintain attention and concentration for extended periods of time, sustain an ordinary routine without special supervision, make simple work decisions, interact appropriately with the general public, ask simple questions or request assistance and being aware of normal hazards and taking appropriate precautions.  Mr. Burdick noted that the side effects of Plaintiff's medication included headaches, nausea, lightheadedness and dizziness (Tr. 185-188).

## IV.  STANDARD OF REVIEW

This Court exercises jurisdiction over review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383 (c)(3).  *McClanahan v. Commissioner of Social Security*, 474 F.3d 830, 832-33 (6th Cir. 2006).  Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.

*Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003) (*see Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive so long as they are supported by substantial evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  The court's review is limited to determining whether there is substantial evidence in the record to support the findings.  *Id.* (*citing Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 851 (6th Cir.1986)).  Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir.1981) *cert. denied,* 103 S. Ct. 428 (1983) (*quoting Richardson v. Perales*, 91 S. Ct. 1420, 1426 (1971)).  Furthermore, the court must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  The court's role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony.  *Id.* at 614-615 (*citing Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987)).

## V.  STANDARD FOR ESTABLISHING DISABILITY

To establish disability under the Act, a claimant must show that he/she is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *Underwood v. Commissioner of Social Security*, 2010 WL 424970, *4  (N. D. Ohio 2010) (*citing* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A)).  The claimant's impairment must prevent him or her from doing his or her previous work, as well as any other work existing in significant

6

numbers in the national economy.  *Id.* (*citing* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3) (B)).  A five-step

sequential evaluation is employed to determine whether a claimant is disabled.  *Id.*  If a claimant can be

found disabled or not disabled at any step of the sequential evaluation, the review ends.  *Id.* (*citing* 20

C.F.R. § 404.1520(a)).

At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged

in substantial gainful activity, *i.e.,* working for profit.  *Id*.

At Step Two, the ALJ considers the medical severity of the claimant's impairments. A claimant

is not disabled if he/she does not have a severe medically determinable physical or mental impairment that

also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are

severe and meets the duration requirement.  *Id.*

At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals

one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement.  *Id.* (*see* 20

C.F.R. § Part 404, Subpart P, Appendix 1).  A claimant is disabled if he or she has an impairment that

meets the listing and the duration requirement.  *Id.*  Before considering the fourth step, the ALJ must

determine the claimant's Residual Functional Capacity ("RFC"), *i.e.,* the claimant's ability to perform

physical and mental work on a sustained basis despite limitations from impairments.  *Id.*

At Step Four, the ALJ considers whether the claimant's RFC permits him/her to perform past

relevant work.  *Id.*

At the final step, Step Five, the ALJ considers the claimant's RFC and his or her age, education,

and work experience to determine whether the claimant may work.  *Id.*  Even if the claimant's impairment

does prevent him/her from doing her past relevant work, if other work exists in the national economy that

the claimant can perform, then the claimant is not disabled.  *Id.* (*citing Abbott v. Sullivan*, 905 F.2d 918,

7

923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 124 S. Ct. 376, 379 (2003) (describing five-step evaluation)).

The claimant bears the burden of proof at steps one through four. *Id.* (citing *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004)). At Step Five, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* (*citing Jones v. Commissioner of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003)). The claimant bears the ultimate burden of proof on the issue of disability. *Id.* at *4-5 (*see* 20 C. F. R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson v. Heckler*, 750 F. 2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the burden of proof on the issue of disability."). The burden of proof regarding the establishment of disability onset date lies with the claimant. *Id.* (*citing McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 836 (6th Cir. 2006)). Moreover, the claimant has the burden of providing detailed medical evidence allowing the ALJ to make an informed decision. *Id.* (*see Landsaw v. Secretary of Health & Human Services*, 803 F.2d 211, 214 (6th Cir. 1986)). Lastly, the claimant must not only produce a diagnosis of an impairment, but also demonstrate correlative functional limitations. *Id.* (*citing* 20 C.F.R. § 404.1512(c)).

## VI. ALJ DETERMINATIONS

After consideration of the entire record, the ALJ made the following findings:

1.      Plaintiff had not performed substantial gainful activity since December 22, 2005.

2.      Plaintiff was impaired by severe impairments of anxiety and mood disorders; however, such impairments, individually or in combination, were not medically equal to one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1.

8

3.     Plaintiff had the RFC to perform a full range of work at all exertional levels but he is limited to simple, routine tasks with no more than superficial interaction with co-workers, supervisors and the general public.

4.     Plaintiff was unable to perform past relevant work.

5.     Plaintiff was twenty years of age, had a limited education and was able to communicate in English.

6.     Based on Plaintiff's RFC, age, education and work experience, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

7.     There were a significant number of jobs in the national economy that Plaintiff could perform.

8.     Plaintiff was not under a "disability" as defined in the Act, at any time since December 22, 2005 (20 C.F.R. § 416.920(g)).

(Tr. 13-23)

## VII.  DISCUSSION

Plaintiff seeks remand and alleges that:

(1)     The ALJ committed legal error when he failed to evaluate Dr. Mason's opinions pursuant to the requirements of SSR 96-2p.

(2)     The ALJ committed legal error when he failed to re-contact the treating sources consistent with 20 C. F. R § 404.1527 and SSR 96-5p.

(3)     The ALJ committed legal error when he failed to include all of Plaintiff's functional limitations in the RFC assessment and the ALJ lacked substantial evidence to support the conclusion that Plaintiff was not disabled.

(4)     The ALJ committed legal error when he failed to include all of Plaintiff's functional limitations in the hypothetical question posed to the VE.

**(1)     TREATING PHYSICIAN RULE**

Generally, the opinions of treating physicians are given substantial, if not controlling, deference.

*Warner v. Commissioner of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004) (*citing King v. Heckler*, 742

F.2d 968, 973 (6th Cir. 1984); 20 C.F.R. § 404.1527(d)(2) (2004)).  Treating physicians' opinions are only

given such deference when supported by objective medical evidence.  *Id.* (*citing Jones v. Commissioner of Social Security*, 336 F.3d 469, 477 (6th Cir. 2003)).  Opinions of treating physicians are given great weight even if those opinions are deemed not to be controlling.  *White v. Commissioner of Social Security,* 572 F.3d 272, 286 (6th Cir. 2009) (*citing* S.S.R. 96-2p).  ALJs must articulate "good reasons" for not giving the opinions of a treating physician controlling weight.  *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)).  But "the ultimate decision of disability rests with the administrative law judge."  *Id.* (*citing Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992)).

Controlling weight applies when all of the following are present:

1.  The opinion must come from a "treating source," as defined in 20 C.F.R. § 404.1502.

2.  The opinion must be a "medical opinion."  Under 20 C.F.R. § 404.1527(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. (See SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner.").

3.  The adjudicator must find that the treating source's medical opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques. The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion.

4.  Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be "not inconsistent" with the other "substantial evidence" in the individual's case record.

TITLES II AND XVI:  GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, SSR 96-2p, 1996 WL 374188, *2 (1996).

The ALJ claimed that he evaluated Dr. Mason's opinions consistent with SSR 96-2p.  First he did consider Dr. Mason a treating source even though his sole focus was the pharmacological management of Plaintiff's treatment.  Second, he considered Dr. Mason's medical opinions regarding the nature and severity of Plaintiff's impairments.  Third, he considered that Dr. Mason's opinions were derived from medically acceptable clinical diagnostic techniques.  However, there were no diagnostic techniques to

support his conclusions.  Finally, the ALJ considered that Dr. Mason's opinions were internally inconsistent as he vacillated between finding that Plaintiff had marked limitations in his ability to concentrate or maintain attention (Tr. 17-18).  Although the ALJ did not discuss Dr. Mason's opinions in the chronological order specified in SSR 96-2p, he did evaluate Dr. Mason's opinions consistent with the provisions of SSR 96-2p.  The ALJ did not commit legal error in his analysis..

       **(2)   RE-CONTACT LEGAL SOURCES**.

Plaintiff argues that the ALJ had a duty to develop the record by re-contacting Dr. Mason, Ms. Boehnen, and Mr. Burdick if he thought their opinions were either inconsistent, not complete, or inadequate for a proper evaluation of the evidence.  Plaintiff argues that such contact was mandated under 20 C. F. R § 404.1512(e) and SSR 96-5p.

Under the regulations, the ALJ does have responsibility to develop the administrative record. *Deskin v. Commissioner of Social Security*, 605 F. Supp.2d 908, 911 (N. D. Ohio 2008).  Specifically, 20 C.F.R. § 404.1545(a)(3) states that "we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get the medical records from your medical sources."  20 C. F. R. § 404.1512(e) states that it is "our responsibility" to "develop your complete medical history for at least 12 months preceding the month in which you file your application . . . "  That responsibility includes recontacting medical sources if the evidence "is inadequate for us to determine whether you are disabled . . . " *Emrick v. Commissioner of Social Security*, 2010 WL 503113, 4 (S. D. Ohio 2010).  However, an ALJ need *not* seek further clarification from a treating physician if the record is sufficient to allow him or her to make a disability determination.  *Smith v. Astrue,* 2009 WL 2733827, 11 (S. D. Ohio 2009) (*citing DeBoard v. Commissioner of Social Security,* 211 Fed. Appx. 411, 416 (6th Cir. 2006) ("Generally, an Administrative

Law Judge needs to  re-contact a medical source only if the evidence received from that source is 'inadequate' for a disability determination").  A medical opinion is not "inadequate" simply because it disagrees with that of another medical professional, *id.,* and failure to re-contact medical sources is harmless where a plaintiff "did not identify or offer to present additional evidence from [her] treating physicians showing that [she] was disabled during the relevant period."  *Id.* (*citing Melton v. Commissioner of Social Security,* 178 F.3d 1295 [table], 1999 WL 232700, at *5 (6th Cir. 1999)).

Contrary to Plaintiff's assertions, there is adequate evidence to support the ALJ's finding that Plaintiff is not disabled.  As previously outlined, the ALJ considered and discussed the opinions of Drs. Mason, Ms. Boehnen and Mr. Burdick.  Including the opinions of Dr. Mason, Ms. Boehnen and Mr. Burdick, the record is adequate to make a determination as to whether Plaintiff was disabled.  Plaintiff did not identify additional evidence that if solicited from Dr. Mason, Ms. Boehnen, and Mr. Burdick, would show that Plaintiff was disabled during the relevant period.  The failure to re-contact Dr. Mason, Ms. Boehnen or Mr. Burdick was harmless.

**(3)    PLAINTIFF'S RFC**.

Plaintiff contends that the ALJ erred in failing to consider that he suffered from an anxiety disorder, a mood disorder and he was limited to simple routine tasks with no more than superficial interaction with fellow employees, supervisors and the public.

RFC is an assessment of what a claimant can and cannot do, not what he or she does and does not suffer from.  *Howard v. Commissioner of Social Security*, 276 F.3d 235, 239 (6th Cir. 2002).  Simply, RFC is an assessment of remaining abilities for work once the limitations have been taken into account.

The Magistrate finds that the ALJ properly assessed Plaintiff's RFC.  Under the rules, there is no need for inclusion of impairments in the assessment of RFC.  Thus, the exclusion of an anxiety disorder

and a mood disorder was appropriate.  The ALJ did consider whether Plaintiff was limited to simple tasks with no more than a superficial interaction with co-workers, supervisors and the public as he adopted these limitations in assessing RFC (Tr. 14).


**(4)** **THE HYPOTHETICAL QUESTION**.

Plaintiff suggests that the ALJ erred by failing to include in the hypothetical question posed to the VE, his functional limitations resulting from an anxiety disorder which resulted in mood swings, racing thoughts, and fluctuation of symptoms, the findings by Dr. Mason and Mr. Burdick that the impact of his "good days and bad days" would significantly impact his ability to show up for work, and the fluctuating nature of his behavior including anger, irritation, withdrawal, isolation and racing thoughts.

In order for a VE's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments.  *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010) (*citing Howard*, *supra*, 276 F. 3d at 241; *see also Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004) (though an ALJ need not list a claimant's medical conditions, the hypothetical should provide the vocational expert with ALJ's assessment of the what the claimant "can and cannot do.")).  The ALJ is not obliged to include unsubstantiated complaints in the hypotheticals.  *See Hardaway v. Secretary of Human Services*, 823 F. 2d 922, 927-928 (6th Cir. 1987).

Here, the ALJ relied on the VE's testimony in response to a hypothetical question that stated, in relevant part:  assume this individual would be limited to simple, routine tasks with superficial interaction with coworkers, supervisors and the general public.  Plaintiff's counsel posed an alternative hypothetical

question that included, generally, interruptions from psychologically based symptoms (Tr. 254).  The findings of Dr. Mason and Mr. Burdick are not substantiated.  Dr. Mason's assessments were predicated on Plaintiff's reports.  He estimated, based on Plaintiff's reports, that Plaintiff would have good days and bad days and the designation of these days would impact his ability to show up for work.  Similarly, there is nothing to substantiate Mr. Burdick's suppositions.  The Magistrate is not persuaded that the failure to include the **unsubstantiated** conclusions by Dr. Mason or Mr. Burdick in the hypothetical questions posed to the VE was harmful error.

## VIII. CONCLUSION.

For the foregoing reasons, the Magistrate recommends that the Court affirm the Commissioner's decision, dismiss the complaint and terminate the referral to the Magistrate.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   August 11, 2010

## VIv. NOTICE FOR REVIEW

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, as amended on December 1, 2009, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings,

recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.